## E. B. GOSS, Respondent, v. BEN LINDBERG, Appellant.

(169 N. W. 585.)

**Summons — district court — defendant appearing in response to — suit to enjoin him from trespassing on lands — issues fully tried — form of action — no objection made to in district court — action involving right of possession of land — question of — cannot be raised for first time on appeal — trial by jury — waiver of right to.**

1. Where a defendant appears before a district judge in response to a summons and tries the issues involved in a suit to enjoin him from trespassing upon the land of the plaintiff, and cutting, harvesting, threshing or marketing

crops growing thereon, and makes no objection to the form of the action or the method of trial, he cannot, upon appeal, contend that the action, so far as it involves a right of possession of land, should have been tried to a jury.

**Trial court — findings of — supported by evidence.**

2. The evidence as examined and *held* to support the findings of the trial court to the effect that the plaintiff is entitled to uninterrupted possession of his land and to the crops growing thereon.

Opinion filed September 25, 1918.　Rehearing denied November 30, 1918.

Appeal from the District Court of Ward County, *K. E. Leighton,* J. Affirmed.

*Greenleaf, Wooledge, & Lusk,* and *Ben Combs,* for appellant.

Possession of real property cannot be taken from one and given to another in an injunction action.　Martinson v. Marzolf, 14 N. D. 301.

One who holds real estate under an unlawful entry and even without color of title cannot be removed therefrom, and the right of possession determined, in an injunctional action, though such person be insolvent. Warlier v. Williams (Neb.) 73 N. W. 539; Pom. Eq. Jur. §§ 221, 275, 1346, 1347 and 1357; 22 Cyc. 828.

*McGee & Goss,* for respondent.

Appellant was never at any time covered by the issues here, the tenant of respondent.　There was never any lease agreement between the parties covering the land in question, and appellant was merely the servant of the respondent, so long as his services proved satisfactory. 7 Words & Phrases, 6329; Gray v. Rt. Co. 11 Hun, 70, 741; Silsby v. Town, 24 Fed. 893–894; Hart v. Hart, 22 Barb. 606–610; Brown v. Foster, 113 Mass. 138, 18 Am. Rep. 463; Gibson v. Granage, 39 Mich. 49, 33 Am. Rep. 351; Barrett v. Raleigh Coal Co. 51 W. Va. 416, 41 S. E. 220.

"A contract of employment providing that the work performed would be to the satisfaction of the employer means that the employer is to be the judge,—that the question of the reasonableness of his judgment is not open to contention, and does not mean that the employee will be entitled to recover if he was a competent workman."　Koehler v. Buhl, 94 Mich. 496, 54 N. W. 157; Plano Mfg. Co. v. Ellis, 68 Mich. 101, 35 N. W. 841; Taylor v. Williams, 45 Mo. 80–81; Harford v. Brush, 43 Vt. 528; McCarran v. McNulty, 73 Mass. 139; Union League Club

v. Blymyer, 204 Ill. 117, 68 N. E. 409; Wood County v. Smith, 50 Mich. 565, 15 N. W. 906, notes in 17 L.R.A. 210 and 65 L.R.A. 783; Holingsworth v. Colthorst, 78 Kan. 455, 17 L.R.A.(N.S.) 741; Thaler v. Wilhelm Co. (Pa.) 33 L.R.A.(N.S.) 345, 6 R.C.L. 952–953, §§ 333 and 334.

Without a lease appellant had no right upon respondent's premises for any purpose. He was insolvent and was threatening to take the respondent's crops. Proof of his insolvency establishes respondent's right to equitable relief by injunction, as no other relief at law would be adequate as against the threatened irreparable injury. 14 R.C.L. 346, § 48; note in 17 L.R.A. 210; 65 L.R.A.783; Holingsworth v. Colthorst, 78 Kan. 455, 18 L.R.A.(N.S.) 741; Thaler v. Wilhelm Co. (Pa.) 33 L.R.A.(N.S.) 345; 6 R.C.L. 952, 953, §§ 333 and 334.

With our title conceded; with our possession undisputed; with appellant's own testimony making a finding that the law be followed impossible, and under the showing of irreparable injury and the insolvency of the appellant, the injunctional judgment should be affirmed. Zimmerman v. McCurdy, 15 N. D. 79; Martinson v. Marzolf, 14 N. D. 301.

The injunctional judgment was superseded and stayed as to execution in violation of law. Notes in 1 L.R.A.(N.S.) 554; 16 L.R.A. (N.S.) 1063; and 38 L.R.A.(N.S.) 436; 3 C. J. 1281 et seq.

BIRDZELL, J. This is an appeal from a judgment entered in the district court of Ward county, awarding a permanent injunction to the plaintiff and respondent, which enjoins the defendant and appellant from trespassing upon the land of the plaintiff and cutting and harvesting, threshing, or marketing the crops growing thereon. The controversy arose out of a misunderstanding between the parties as to their relationship following the execution of a contract entered into in 1917. The plaintiff, E. B. Goss, being the owner of three quarter sections of land, entered into a contract with the defendant, Ben Lindberg, in the month of February, 1917, whereby Lindberg agreed to break and sow to flax 400 acres or more of the plaintiff's land at $5.50 per acre. In the contract options were given as follows:

"It is further understood that Lindberg will have first chance at cutting and harvesting, threshing, and hauling and marketing said flax

providing he will perform the same immediately when Goss is ready to have it done and as cheaply as others will do it.

"It is further understood and agreed that if Goss is satisfied with the way said breaking and seeding and other work is done, Lindberg shall have the first chance at renting said land so broken for the cropping season of 1918 upon the following terms, to wit:

"Goss to furnish seed. Lindberg to double-disk said land in the fall, if possible, and seed the same to wheat in the spring of 1918. Goss to furnish one-half twine and one-half thresh bill and take one-half of the crop. Lindberg to deliver in the elevator without charge Goss's one half of the crop for 1918."

More than 400 acres of the land were broken and sown to flax in 1917, but, owing to drouth, the seed failed to sprout and there was consequently no crop. Lindberg was paid for the work he did under the contract in 1917. During the winter there was some talk between the parties relative to the farming of the land the following season. Both parties agree that in these conversations, occurring during December, January, and February, the plaintiff proposed to the defendant that he put in the crop for hire. Goss testified that the defendant actually proposed to seed the land for $2 per acre, but that he did not at the time accept his proposition because he considered the price too high. Lindberg, on the other hand, testified that he told Goss that he would not crop in for hire, but that he would hold him to the contract. It is clear from the testimony of both parties that a definite agreement for putting in the crop for hire was not reached during the negotiations in the winter.

In the spring of 1918, Goss shipped seed wheat to Lindberg, giving certain directions with reference to hauling and cleaning the same. On April 20th, Goss went out to ascertain what was being done towards putting in the crop, and, upon inspection, learned that a portion of the land had been disked and that Lindberg was making preparations to continue the seeding operations. The season of 1918 being early, it seems that Goss felt that the seeding operations should have been further advanced on April 20th than he found them to be; and, during a conversation with Lindberg on the above date, he, Goss, suggested that he would have one Thompson, a tenant upon another of his farms, seed a portion of the land amounting to about 140 acres. Lindberg did not

take kindly to this suggestion and the parties separated without a definite understandng. Goss, however, immediately afterward wrote Lindberg to the effect that he had decided to let Thompson put in the 140 acres, giving as his reasons therefor the lateness of the season, and that he had had to buy $400 worth of feed for Thompson, so that Thompson was already paid for the work. To use his own language, he said: "I cannot afford to pay him in that way and you, too; or in other words, pay you for it and loan him the money for the whole season, hard as times are, too. So will let him work out part of what he owes me that way." After the letter was written, the defendant seeded all of the land except that portion which was turned over to Thompson by Goss. In the month of July, Goss wrote the defendant to the effect that he had been up to see his crop and had intended seeing the defendant about giving him the first chance at cutting that portion which had been seeded by him. He also stated that he would probably be up again during the week, at which time he would want to know what the defendant would want for cutting the crop. In reply to this letter, Lindberg wrote as follows:

"I have your letter of the 22d inst., and cannot understand why you should be looking for anyone to cut the crop on the Hanna land. I put in this land according to our contract and will see to the cutting of it when it is ready and deliver your half to the elevator when it is threshed."

As a consequence of the disagreement as to the ownership of the crop, this action was brought, and it is in this court for a trial *de novo*.

In addition to the usual specification demanding a review of the entire case, the appellant specifies that the complaint does not state a cause of action, it appearing on its face that the plaintiff has an adequate remedy at law. Whatever merit there may be in the appellant's contention, that the case is one that should have been tried to a jury, we are satisfied that he is in no position to predicate error upon the failure of the trial court to submit the case to a jury. The action is one for injunction, and the counsel for the defendant could not have been misled as to the character of the proceedings from their very inception; yet, according to the record, it was at no time suggested that the trial should not proceed before the court as an ordinary trial of a suit in equity. No objection was made to the form of the action, the suffi-

ciency of the complaint, or the method of trial, by either a motion or a demurrer, and the entire controversy was tried before the court on its merits. Under these circumstances, the appellant is in no position to argue that, inasmuch as the case involves a right of possession between plaintiff and defendant, it should have been tried at law as a civil action in forcible entry and detainer.

Upon its merits the case involves questions of fact upon which the testimony is conflicting. There were but two witnesses sworn upon the trial, the plaintiff and the defendant. The plaintiff testified to the effect that it was well understood between him and the defendant that he had bought the half section under a crop-payment contract which rendered it necessary that he should get the first crop, and that, owing to the failure of the flax crop in 1917, he was compelled to hire his seeding done in 1918 so that he might realize upon that crop in order to make good his crop payment to the vendor. He testifies that he told Lindberg in the fall and winter of 1918 that for the above reasons he would not rent the land either to him or anyone else. Lindberg, on the other hand, testifies that when Goss suggested hiring the seeding done he insisted that he would farm the land under the 1917 contract, and that Goss assented to his doing so. The testimony is at variance throughout touching the actual arrangements made, and the version of each party as to their conversations and transactions is consistent with his contention here. It appears, however, from the letter Goss wrote to the defendant, after his visit to the farm in the spring before any seeding had been done but after a little preparatory work by Lindberg, that Goss clearly intended to pay a reasonable price for the seeding of the crop. The portion of the letter quoted above clearly indicates that such was his intention. Following this letter, we find him yielding to Goss's direction, and allowing approximately 140 acres of the land embraced in the contract of the previous year to be seeded by Thompson for hire.

Under the record presented, the testimony of the two witnesses conflicts in every vital point, and the proper solution of this case requires that the findings shall be in accordance with the version of either one party or the other. We are of the opinion that the circumstances disclosed by the record tend to support the version of the plantiff rather than that of the defendant, and the trial judge, who had the benefit of

the appearance of the witnesses before him, having found in favor of the plaintiff, we do not feel justified in disturbing the findings. The judgment of the trial court is therefore in all things affirmed.

GRACE, J. I dissent.

ROBINSON, J. (dissenting). This action presents a peculiar phenomena. It was commenced in August, 1918, and in less than a month it found its way to this court. The plaintiff is a shrewd lawyer,—a man of means and influence; he has been a district and a supreme court judge. The defendant is a man unlearned and poor, and, strange as it may seem, his poverty is made the corner stone and the basis of this action. Though this is not a replevin suit or an ejectment suit, it is brought to settle a dispute concerning the possession of real and personal property.

The plaintiff avers that he owns certain land and the crop thereon, and that defendant claims to own a half interest in the crop and intends to harvest and thresh the same; that he is insolvent and the head of a family. Wherefore the plaintiff has no adequate remedy at law, and he demands that defendant be enjoined from withholding the possession of the property and from harvesting and threshing it. The defendant appeals from a judgment against him. By answer defendant claims title and possession under a contract with the plaintiff whereby he, the defendant, was to crop the land, to harvest the crop for a half interest in the same.

Defendant claims: (1) That plaintiff had an adequate remedy at law, and that a party may not use an injunctional suit to recover the possession of real or personal property, even though the defendant be poor; (2) that plaintiff did not prove his right to the possession of the property.

On the first point Justice Birdzell seems wholly to misapprehend the position of defendant's counsel. It is that the complaint does not state a cause of action,—that a party may not use an injunctional suit to recover possession of land or chattels. Of course, no one is so daffy as to contend that he is entitled to a trial by jury in a proper injunctional suit, but this is not such a suit. By statute, an issue of fact in

an action to recover money only, or specific real or personal property, must be tried by jury unless a jury is waived.  § 7608.

The constitutional right of trial by jury would be of little avail if it might be evaded by an injunctional suit to recover or defend money or specific real or personal property.  This court and many other courts have held that a party may not recover either real or personal property by an injunctional suit, and that is the law.  Martinson v. Marzolf, 14 N. D. 301, 307, 103 N. W. 937; Warlier v. Williams, 53 Neb. 143, 73 N. W. 539; 28 Cyc. 228, and one hundred decisions there cited.

Point 2:  But on the real merits of the case, what are the facts and probabilities and the weight of evidence?  It is a fact that Lindberg has sown and harvested the crop, and he must have done it at a great expense.  He was to receive in pay the reasonable value of his work and expense or a half interest in the crop.  In regard to the compensation, the testimony of Goss and Lindberg is in direct conflict and the one does fairly cancel the other.  Hence, the cause should be determined by the conceded facts and the probabilities.  It is certain that in 1917, under a written contract with the plaintiff, the defendant broke the land, seeded it to flax, and in consideration of doing the work at a reduced price, it was agreed that, if Goss was satisfied with the breaking and seeding, Lindberg should have the first chance at the renting of the land for the cropping season of 1918 on the following terms:

Goss to furnish seed, Lindberg to double-disk the land in the fall if possible; Goss to furnish one-half twine and one-half thresh bill and to take one half of the crop, the other one half to go to Lindberg as his share of the 1918 crop; Lindberg to deliver in the elevator without charge Goss's one half of the crop for 1918.

Now it is certain that in 1917 Lindberg did a good job and did it with the inducement of a half interest in the 1918 crop.  Relying on that option, Lindberg went upon the land in the spring of 1918, disked it and cropped it, Goss furnishing him the seed.  And it is certain the cropping was done *without any express agreement to do it for hire, and there is no claim that Goss ever paid or offered to pay for the disking and seeding, or that defendant ever asked for pay.*  Indeed, that point was raised by a judge of this court when Goss first applied for an order to show cause, and Goss then claimed that he had made two payments, —one $75 and one $70.  But now it appears from the evidence that the

$75 was on a debt of $118, and the $70 was on an order to Rogers Lumber Company. And when Goss settled for the work done in 1917, he deducted the amount of the order. (82). He deducted $132 of which $70 was for the order.

As Goss insists, the defendant was poor and in need of money. He was hard up and "busted." (90). Yet, he never asked Goss to pay him for putting in the crop and Goss never offered to pay him. According to his own testimony, he allowed this poor defendant to act as his banker to finance his cropping, and he never disputed Lindberg's right to the land under the lease until a good crop was fully assured and until he had gone and passed three hours in looking over the crop. Then, on July 22, 1918, he wrote Lindberg that he was amazed to learn that he, Lindberg, should claim an interest in the crop. And Lindberg expressed an equal amazement that Goss should question his interest.

Now the plaintiff is a shrewd lawyer and a man of affairs. He knew well how to make a definite contract; he knew that if he hired a poor man to do work by the acre, he should pay for the work as it was done. And it was not for him to put himself in a dubious position, and to await the maturing of the crop before electing to pay in cash or by a share of the crop. Under the facts presented, if the matured crop had been destroyed by hail and if Lindberg had then brought a suit to recover the reasonable value of the work and expenses, Goss might have successfully defended by showing the optional lease and the fact that Lindberg, though poor and needy, had never asked for pay while there was a prospect of a crop. Goss knew that when a person puts in a crop for money hire, he wants his pay when the work is done. He does not wait until after harvest and take a chance of getting his pay at the end of a lawsuit. No one ever heard or knew of a poor man doing business like that.

Now this is really the main point in the case. It was for some reason ignored by Goss, though his attention was repeatedly directed to it by a judge of this court, and though it was insisted on by counsel for the defendant it was also ignored by the trial judge, and for that reason his decision is of no weight.

By comparison the other points are all trivial. It is true that on April 20th, in passing Lindberg on the road, Goss spoke to him about letting one Archie crop 120 acres of the land. Lindberg had then

disked 120 acres and he flared up and said to Goss, "To hell with you and Archie." The next day to mollify Lindberg, and to induce him to let Archie crop 120 acres, Goss wrote him quite a nice smooth letter. He says: "My principal reason is that I had to buy $400 worth of feed for Archie and so he is paid for it. Now I do not feel that I can afford to pay him in that way and you too. Or, in other words, to pay you for it and to loan him the money for the whole season hard as the times are too." This pay talk was put in the middle of the letter, and there is no showing that Lindberg gave it any attention. And it was no way of saying that Lindberg should receive his pay in money, and not in a share of the crop. And when Archie offered to seed the 120 acres, Lindberg said to him: "You may put it in, but I will harvest the crop."

Truly Goss testifies that he refused to let the place on shares to Lindberg, saying that he had to have all the crop of 1918 to apply on his land contract. And so he put in evidence a contract to pay for the land by turning over a part of the crop. As the contract shows, he was to pay on the land $4,500 November 1, 1917, and $5,000 November 1, 1922, and the crop on the land was security for the same. Of course, that contract was not material, and the ex-judge should have known better than to put it in evidence. He knew from the experience in 1917 that a crop may prove a failure. He knew it cost money to pay help, to buy teams, feed, farm machinery, and to disk, seed, harrow land, and to harvest and thresh a crop. The usual pay for such work is precisely the same as stated in the optional lease, and for such work most men prefer to pay half the crop rather then to pay for it in cash and take the chance of having no crop. One year with another, the risk and expense of producing a crop is equal to half its value.

Finally, the burden of proof is on the plaintiff, and all his testimony is fairly met and canceled by the testimony of Lindberg. It is a case wherein the actions of the parties speak louder than words, and fairly show that the cropping was done under the optional lease, and, with all his poverty, Lindberg financed the deal and took the risk of getting a crop. And the poverty of Lindberg is no legal cause of dispossessing him by an injunctional suit. The complaint does not state a cause of action. Hence, the action should be dismissed.